JUDITH R. STARR
General Counsel
CHARLES L. FINKE
Deputy General Counsel
LORI A. BUTLER
Assistant General Counsel
MERRILL D. BOONE
MARK R. SNYDER (CA 109430)
Attorneys
1200 K Street, N.W.
Washington D.C. 20005-4026
Telephone: (202) 229-3423
Facsimile: (202) 326-4112
E-mail: snyder.mark@pbgc.gov

Attorneys for Pension Benefit Guaranty Corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, on its own behalf and on behalf of the Kumjian Enterprises, Inc. Defined Benefit Pension Plan, 1200 K Street, N.W. Washington, D.C. 20005-4026 | Civil Action No.: 2:19-cv-6060 COMPLAINT |

Plaintiff,

v.

KUMJIAN ENTERPRISES, INC.
9254 Garvey Ave.
South El Monte, CA 91733

KUMJIAN LEASING PARTNERSHIP
c/o SARKIS AND VARSENIK
KUMJIAN
855 Holladay Rd.
San Marino, CA 91108-1103

SARKIS KUMJIAN
855 Holladay Rd.
San Marino, Ca 91108-1103

VARSENIK KUMJIAN
855 Holladay Rd.
San Marino, Ca 91108-1103

1

COUNTY OF LOS ANGELES
c/o Clerk of the Board
500 West Temple Street, Room 383
Los Angeles, CA 90012

          Defendants.

## PRELIMINARY STATEMENT

Pension Benefit Guaranty Corporation ("PBGC"), on behalf of the Kumjian Enterprises, Inc. Defined Benefit Pension Plan (the "Plan"), brings this action (1) to collect from the above-captioned defendants, other than Los Angeles County ("Pension Defendants") their liability for unpaid minimum funding contributions under 26 U.S.C. § 412(a), (b), 29 U.S.C. § 1082(a), (b) ("Contribution Liability"); and (2) to enforce the Plan's statutory lien for Contribution Liability.  In addition, PBGC, on its own behalf, brings this action (1) to collect from the Pension Defendants their liability to PBGC under the termination liability provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") under 29 U.S.C. § 1362(a), (b) ("Termination Liability"); and (2) to enforce PBGC's statutory lien for Termination Liability.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action without regard to the amount in controversy, pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1303(e)(3).

2.      Venue in this district is proper under 28 U.S.C. § 1391 and 29 U.S.C. § 1303(e)(2).

## PARTIES

3.      PBGC is the United States government agency that administers and regulates the defined benefit pension plan insurance program established by Title IV of ERISA, *as amended,* 29 U.S.C. §§ 1301-1461 (2012, Supp. V 2017).  Subject to statutory limits, PBGC guarantees the payment of benefits under terminated pension plans covered under Title IV ("Title IV Plans").  29 U.S.C. § 1322.  When an

2

underfunded pension plan terminates, PBGC typically becomes statutory trustee of the plan.  *See* 29 U.S.C. § 1342(b)(1).  In that capacity, PBGC has the power to collect for the plan any amounts due the plan, and to "commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan."  *See* 29 U.S.C. § 1342(d)(1)(B)(ii), (iv).  PBGC, a government-owned corporation, has independent litigation authority.  29 U.S.C. § 1302(b)(1).

4.     Defendant Kumjian Enterprises, Inc. ("Kumjian Inc.") is a California corporation with its principal place of business in South El Monte, California.

5.     Defendant "Kumjian Leasing Partnership" ("Kumjian Leasing") is an informal general partnership, between Defendants Sarkis and Varsenik Kumjian, with its principal place of business in South El Monte, California.

6.     Defendant Sarkis Kumjian ("Sarkis") is a natural person residing in San Marino, California, and the husband of Varsenik Kumjian.

7.     Defendant Varsenik Kumjian ("Varsenik") is a natural person residing in San Marino, California, and the wife of Sarkis.

8.     Defendant Los Angeles County ("Los Angeles") is named as a defendant pursuant to 26 U.S.C. § 7403(b) for the sole reason that it might have or claim an interest in property against which PBGC seeks to enforce liens.

**THE PENSION PLAN**

9.     The Plan was established by Kumjian Inc., effective November 1, 1975, to provide pension benefits for certain of its employees.

10.     At all relevant times, the Plan has been a Title IV Plan.

11.     At all relevant times, Kumjian Inc. has been the contributing sponsor of the Plan, within the meaning of 29 U.S.C. §§ 1082(b)(1), 1301(a)(13).

12.     At all relevant times, Kumjian Inc. has been the administrator of the Plan, within the meaning of 29 U.S.C. §§ 1002(16)(A), 1301(a)(1).

13.     For all years from 2008 through 2015, inclusive, the Plan was a calendar year plan.

3

14.     For Plan years 2008 and later, only $29,930 in minimum funding contributions has been contributed to the Plan.

15.     On or shortly before December 19, 2014, the Plan distributed all of its assets, pro rata to the Plan participants.

16.     As the Plan was 72% funded, each participant received a pro-rata distribution of 72% of his or her benefit.

17.     The distribution of all Plan assets left the Plan unable to pay benefits that were currently due.

18.     PBGC shall institute proceedings to terminate a Title IV Plan as soon as practicable when the plan does not have assets to pay benefits which are currently due. 29 U.S.C. § 1342(a).

19.     By agreement between PBGC, and Kumjian Inc. as Plan administrator, effective March 30, 2017, the Plan was terminated under 29 U.S.C. § 1342(a) and (c), with a termination date of December 31, 2014; and PBGC was appointed statutory trustee of the Plan.

## THE CONTROLLED GROUP
### Statutory and Regulatory Background

20.     A "controlled group" ("Controlled Group") of the sponsor of a Title IV Plan is subject to certain liabilities and liens relating to the plan.  29 U.S.C. §§ 1082(b), 1083(k), 4007(e), 4062(a), 4068(a).

21.     The Controlled Group with respect to any person consists of that person and all other persons under "common  control" with that person, as determined under PBGC regulations consistent and coextensive with Treasury regulations under 26 U.S.C. § 414(c).  29 U.S.C.  § 1301(a)(14)(A), (B).

22.     Persons are under common control if they are "two or more trades or businesses under common control" as defined in regulations under 26 U.S.C. § 414(c). 29 C.F.R. § 4001.3(b)(2).

23. Persons are "two or more trades or businesses under common control" as defined in regulations under 26 U.S.C. § 414(c) if they are a "brother-sister group of trades or businesses under common control". 26 C.F.R. § 1.414(c)-2-a).

24. The term "brother-sister group of trades or businesses under common control" means two or more organizations conducting trades or businesses if the same five or fewer individuals own (directly and by attribution) a controlling interest in each organization; and taking into account the ownership of each such individual only to the extent such ownership is identical with respect to each organization, such individuals are in effective control of the organization. 26 C.F.R. § 1.414(c)-2(c)(1).

25. "Organization" means a sole proprietorship, partnership, trust, estate, or corporation. 26 C.F.R. § 1.414(c)-2(a).

### Kumjian Inc. Ownership

26. In the case of a corporation, "controlling interest" means ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation. 26 C.F.R. § 1.414(c)-2(b)(2)(i)(A).

27. PBGC has determined that, as of December 31, 2014, the termination date of the Plan, Sarkis and Varsenik each owned 100% of Kumjian Inc.'s stock, directly or indirectly.

### Direct Ownership

28. On December 31, 2014, Sarkis was the direct owner of approximately 39 percent of the stock of Kumjian Inc.

29. On December 31, 2014, Varsenik was the direct owner of approximately 39 percent of the stock of Kumjian Inc.

30. On December 31, 2014, Liza Kumjian-Smith ("Liza") was the direct owner of approximately 11 percent of the stock of Kumjian Inc.

31. On December 31, 2014, Garrik Kumjian ("Garrik") was the direct owner of approximately 11 percent of the stock of Kumjian Inc.

Constructive Ownership through Spouse

32.    An individual is considered to own an interest in an organization owned by or for his or her spouse for the taxable year if the individual directly owns an interest in the organization at any time during the taxable year.  26 C.F.R.  § 1.414(c)-4(b)(5)(i), (ii)(A).

33.    As of December 31, 2014, stock of Kumjian Inc. directly owned by Varsenik is considered owned by Sarkis because Sarkis directly owned stock in Kumjian Inc. on that date.

34.    On December 31, 2014, considering the direct ownership of Kumjian Inc. stock by Sarkis and Varsenik, Sarkis was the owner of approximately 78 percent of the stock of Kumjian Inc.

35.    As of December 31, 2014, stock of Kumjian Inc. directly owned by Sarkis is considered owned by Varsenik because Varsenik directly owned stock in Kumjian Inc. on that date.

36.    On December 31, 2014, considering the direct ownership of Kumjian Inc. stock by Sarkis and Varsenik, Varsenik was the owner of approximately 78 percent of the stock of Kumjian Inc.

Constructive Ownership through Children

37.    In the case of a corporation, "effective control" means ownership of stock possessing more than 50 percent of total combined voting power of all classes of stock entitled to vote of such corporation or more than 50 percent of the total value of shares of all classes of stock of such corporation.  26 C.F.R. § 1.414(c)-2(c)(2)(i).

38.    If an individual is in effective control of an organization, directly and with the application of the spousal attribution rules, then such individual shall be considered to own an interest in such organization owned by the individual's children who have attained the age of 21 years.  26 C.F.R. § 1.414(c)-4(b)(6)(ii).

39.    Liza and Garrik are children of Sarkis and Varsenik, and on December 31, 2014, Liza and Garrik had each attained the age of 21 years.

40.     Directly and with the application of the spousal attribution rules, Sarkis was in "effective control" of Kumjian Inc. on December 31, 2014.

41.     Sarkis is considered to own the stock in Kumjian Inc. owned by Liza and Garrik on December 31, 2014.

42.     Directly and with the application of the spousal attribution rules, Varsenik was in "effective control" of Kumjian Inc. on December 31, 2014.

43.     Varsenik is considered to own the stock in Kumjian Inc. owned by Liza and Garrik on December 31, 2014.

<u>Ownership on September 15, 2015</u>

44.     The last contribution to the Plan was due and unpaid September 15, 2015.

45.     On information and belief, all of the foregoing allegations material to the ownership of Kumjian Inc. on December 31, 2014, also were true on September 15, 2015.

46.     On September 15, 2015, Sarkis and Varsenik each owned 100% of Kumjian Inc.'s stock, directly or indirectly.

**Kumjian Leasing Ownership**

47.     In the case of a partnership, "controlling interest" means ownership of at least 80 percent of the profits interest or capital interest of such partnership.  26 C.F.R. § 1.414(c)-2(b)(2)(i)(C).

48.     PBGC has determined that, as of December 31, 2014, the termination date of the Plan, Sarkis and Varsenik each owned 100% of the capital interest in Kumjian Leasing, directly or indirectly.

<u>Direct Ownership</u>

49.     On December 31, 2014, Sarkis and Varsenik, as joint tenants, owned a parcel of real property located at 9254 Garvey Avenue, South El Monte, California (such real property, "9254 Garvey").

7

50.     On December 31, 2014, Sarkis and Varsenik, as joint tenants, owned a parcel of real property located at 9326 Garvey Avenue, South El Monte, California (such real property, "9326 Garvey").

51.     On December 31, 2014, Sarkis and Varsenik, as joint tenants, owned a parcel of real property located at 9220 Fern Street, South El Monte, California (such real property, "9220 Fern", and with 9254 Garvey and 9326 Garvey, the "Real Property").

52.     On December 31, 2014, the Real Property constituted the entire capital of Kumjian Leasing, such that Sarkis and Varsenik together directly owned the entire capital interest in Kumjian Leasing.

<u>Constructive Ownership through Spouse</u>

53.     An individual is considered to own an interest in an organization owned by or for his or her spouse for the taxable year if more than 50 percent of the organization's gross income for the taxable year was derived from royalties, rents, dividends, interest, or annuities.  26 C.F.R. § 1.414(c)-4(b)(5)(i), (ii)(C).

54.     In 2014, 100% of Kumjian Leasing's income was derived from rents.

55.     As of December 31, 2014, the capital interest in Kumjian Leasing directly owned by Varsenik is considered owned by Sarkis, and the capital interest in Kumjian Leasing directly owned by Sarkis is considered owned by Varsenik.

56.     On December 31, 2014, Sarkis was the direct or indirect owner of 100 percent of the capital interest in Kumjian Leasing.

57.     On December 31, 2014, Varsenik was the direct or indirect owner of 100 percent of the capital interest in Kumjian Leasing.

<u>Ownership on September 15, 2015</u>

58.     The last contribution to the Plan was due and unpaid on September 15, 2015

59.     On information and belief, all of the foregoing allegations material to the ownership of Kumjian Leasing on December 31, 2014, also were true on September 15, 2015.

60.     On September 15, 2015, Sarkis and Varsenik each owned 100% of the capital interest in Kumjian Leasing, directly or indirectly.

## Common Control

61.     Organizations are under "common control" if the same five or fewer individuals own (directly and by attribution) a controlling interest in each organization; and taking into account the ownership of each such individual only to the extent such ownership is identical with respect to each organization, such individuals are in effective control of the organization.  26 C.F.R. § 1.414(c)-2(c)(1).

62.     PBGC has determined that, as of December 31, 2014, the termination date of the Plan, Kumjian Leasing was under common control with Kumjian Inc.

    a.   On December 31, 2014, because Sarkis and Varsenik each are considered to own 100% of Kumjian Inc., together (or separately), they owned a controlling interest in Kumjian Inc

    b.   On December 31, 2014, because Sarkis and Varsenik each are considered to own 100% of Kumjian Leasing, together (or separately), they owned a controlling interest in Kumjian Leasing.

    c.   On December 31, 2014, because Sarkis is considered to own 100% of Kumjian Inc., and 100% of Kumjian Leasing, his ownership percentage of the two organizations to the extent it is identical is 100%.

    d.   On December 31, 2014, because Varsenik is considered to own 100% of Kumjian Inc., and 100% of Kumjian Leasing, her ownership percentage of the two organizations to the extent it is identical is 100%.

    e.   On December 31, 2014, taking into account the ownership of Sarkis only to the extent it is identical with respect to each of the two organizations, and the ownership of Varsenik only to the extent it is identical with respect to each of the two organizations, Sarkis and Varsenik together (or separately) were in effective control of each organization.

63. Because on information and belief, all of the foregoing allegations material to the ownership of Kumjian Inc. and Kumjian Leasing on December 31, 2014, also were true on September 15, 2015, the date that the last contribution to the Plan was due and unpaid, on that date as well, Kumjian Leasing was under common control with Kumjian Inc.

///

## Trades or Businesses

64. The term "brother-sister group of trades or businesses under common control" means two or more organizations under common control that are conducting trades or businesses.  26 C.F.R. § 1.414(c)-2(c)(1).

65. PBGC has determined that, as of December 31, 2014, both Kumjian Inc. and Kumjian Leasing were conducting trades or businesses.

    a. On December 31, 2014, Kumjian Inc. was conducting a business engraving metal.

    b. On December 31, 2014, Kumjian Leasing was conducting a business leasing real property.

        i. On December 31, 2014, Kumjian Leasing was leasing 9254 Garvey to Kumjian Inc., a trade or business organization under common control with Kumjian Leasing.

        ii. On December 31, 2014, 9326 Garvey and 9220 Fern comprised the Garvey Rose Center, a shopping center with eighteen units.

        iii. In 2014, the Garvey Rose Center generated rents of $271,373.

        iv. In 2014, the Garvey Rose Center generated tax deductions of $121,456.

66. On information and belief:

    a. On September 15, 2015, Kumjian Inc. was conducting a business engraving metal.

b.  On September 15, 2015, Kumjian Leasing was conducting a business leasing real property.

　　i.  On September 15, 2015, Kumjian Leasing was leasing 9254 Garvey to Kumjian Inc., a trade or business organization under common control with Kumjian Leasing.

　　ii.  On September 15, 2015, 9326 Garvey and 9220 Fern comprised the Garvey Rose Center, a shopping center with approximately eighteen units.

　　iii.  In 2015, the Garvey Rose Center generated rents not significantly less than $271,373.

　　iv.  In 2015, the Garvey Rose Center generated tax deductions not significantly less than $121,456.

## Conclusion

67.  PBGC has determined that on December 31, 2014, Kumjian Inc. and Kumjian Leasing were in a "brother-sister group of trades or businesses under common control", and thus a Controlled Group ("Kumjian Group").  *See* 29 U.S.C. § 1301(a)(14)(A), (B); 29 C.F.R. § 4001.3(b)(2); 26 C.F.R. § 1.414(c)-2(a).

68.  On information and belief, on September 15, 2015, Kumjian Inc. and Kumjian Leasing remained in a "brother-sister group of trades or businesses under common control", and thus in the Kumjian Group.

## COUNT I: CONTRIBUTION LIABILITY

69.  PBGC repeats and realleges the allegations contained in paragraphs 1 through 68.

70.  The sponsor of a Title IV Plan is required to make minimum funding contributions to the plan.  26 U.S.C. § 412(a), (b)(1), 29 U.S.C. § 1082(a), (b)(1).

71.  The plan sponsor and each other member of its Controlled Group are jointly and severally liable to the plan for Contribution Liability.  26 U.S.C. § 412(b), 29 U.S.C. § 1082(b).

72.     When PBGC is appointed statutory trustee of a plan, it may collect the Contribution Liability to the plan.  29 U.S.C. § 1342(d)(1)(B)(ii).

73.     On information and belief, each member of the Kumjian Group is jointly and severally liable to PBGC, as statutory trustee of the Plan, for the Contribution Liability.

74.     As general partners of  Kumjian Leasing, Sarkis and Varsenik (collectively, the "Kumjians") are jointly and severally liable for Kumjian Leasing's debt for the Contribution Liability.  *See* Unif. Partnership Act 2013 § 306; Cal. Corp. Code § 16306.

75.     PBGC has determined that the amount of unpaid minimum funding contributions due to the Plan, including interest and other charges ("Unpaid Contribution") as of December 31, 2014, was $1,466,447.

76.     PBGC has determined that interest in the amount of $297,640 accrued on the Unpaid Contribution from December 31, 2014, through June 30, 2019.

77.     The amount of the Contribution Liability, on June 30, 2019, was $1,764,087.

78.     Interest continues to accrue on the Contribution Liability, at the rate prescribed in 26 U.S.C. § 6601(a) ("IRS Underpayment Rate"), compounded daily.  29 C.F.R. § 4062.7.

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment in its favor against all Defendants, jointly and severally, in the amount of $1,764,087, plus pre-judgment interest, at the IRS underpayment rate, compounded daily.

## COUNT II: JUDGMENT DECLARING CONTRIBUTION LIEN VALID AND PERFECTED AS FILED

79.     PBGC repeats and realleges the allegations contained in paragraphs 1 through 78.

80.     The 26 U.S.C. and ERISA provide that once a minimum funding contribution is due and unpaid, such that the unpaid balance of minimum funding contributions to the pension plan including interest and other charges ("Unpaid

Balance") exceeds $1,000,000, a lien ("Contribution Lien") in favor of the plan in the amount of the Unpaid Balance arises "upon all property and rights to property, whether real or personal, belonging to such person and any other person who is a member of the same controlled group. . . ." 26 U.S.C. § 430(k)(1); *see also* 29 U.S.C. § 1083(k)(1) (same).

81.     On July 15, 2013, a minimum funding contribution to the Plan became due and unpaid, such that the Unpaid Balance exceeded $1,000,000, and a Contribution Lien automatically arose in favor of the Plan, encumbering all property and rights to property of each member of the Kumjian Group. *See* 26 U.S.C. § 430(k); 29 U.S.C. §§ 1082(f), 1083(k).

82.     PBGC is authorized to enforce Contribution Liens. *See* 26 U.S.C. § 430(k)(5); 29 U.S.C. §§ 1083(k)(5), 1303(e)(1)(B).

83.     Contribution Liens are perfected upon PBGC's filing of a notice of federal lien in the appropriate jurisdiction(s).[1]

84.     On January 22, 2016, PBGC perfected the Contribution Lien with respect to all personal property of Kumjian Inc. by filing a notice of federal lien with the Secretary of State of California, UCC Section, in the amount of $1,790,695.

85.     On February 17, 2016, PBGC perfected the Contribution Lien with respect to the real property of Kumjian Leasing, and rents or other proceeds thereof, by filing a notice of federal lien, naming Sarkis and Varsenik as debtors, with the Recorder's Office of Los Angeles County, California, in the amount of $1,790,695.

86.     With the accrual of interest through June 30, 2019, the Unpaid Balance increased to $2,351,717.

---

[1]     *See* 26 U.S.C. § 430(k)(4)(C), 29 U.S.C. § 303(k)(4)(C) (rules similar to those under 29 U.S.C. § 1368 apply to Contribution Liens); 29 U.S.C. § 1368(c)(4) (notices of liens under 29 U.S.C. § 1368 to be filed as under 6323(f) and (g); 26 U.S.C. § 6323(a) & (f) (federal tax liens perfected by filing notices).

87.     Because the Contribution Lien secures the Contribution Liability, the Contribution Lien is limited to the Contribution Liability, $1,764,087 as of June 30, 2019.

88.     Interest continues to accrue on the Contribution Lien.

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment declaring the Contribution Lien valid and perfected in its full amount.

## COUNT  III: JUDGMENT DECLARING PRIORITY OF RIGHTS IN ASSETS ENCUMBERED BY CONTRIBUTIONS LIEN

89.     PBGC repeats and realleges the allegations contained in paragraphs 1 through 88.

90.     The Contribution Lien encumbers all property and rights to property that the Kumjian Group held at the time that the Contribution Lien arose, and that the Kumjian Group acquired thereafter.

91.     On information and belief, Kumjian Inc. has property or rights to property encumbered by, and available for satisfaction of, the Contribution Lien, including cash, accounts receivable, inventory, and equipment.   PBGC expects to discover, in the course of this action, the full set of Kumjian Inc.'s assets encumbered by and available for satisfaction of the Contribution Lien, and the locations of such assets.

92.     Kumjian Leasing has property or rights to property encumbered by, and available for satisfaction of, the Contribution Lien, including 9254 Garvey, 9326 Garvey, and 9220 Fern.   PBGC expects to discover, in the course of this action, the full set of the Kumjian Leasing assets encumbered by and available for satisfaction of the Contribution Lien, and the locations of such assets.

93.     PBGC has conducted a diligent search for recorded, unreleased liens on property of the Kumjian Group, seeking such liens on both specific, known property and, more generally, under the legal and trade names of the Pension Defendants in California, the only jurisdiction where members of the Kumjian Group are known to have conducted business.

94.     Defendant Los Angeles filed a county tax lien, naming "Kumjian Enterprises" as debtor, with the Los Angeles County Recorder of Deeds, in the amount of $172, on December 15, 1992 ("Putative Los Angeles Lien").  To date, PBGC has been unable to determine whether the Putative Los Angeles Lien is valid and perfected.

95.     On information and belief, no creditor other than PBGC has perfected a lien against any of the Pension Defendants' property, with the possible exception of the Putative Los Angeles Lien.

96.     PBGC expects to discover, in the course of this action, the full set of unsatisfied liens and other property interests, if any, in assets of the Kumjian Group and all facts material to the priority of such liens and other property interests, and to join as parties in this action — pursuant to Federal Rule of Civil Procedure 19 and 28 U.S.C. § 1655 — any persons necessary to the just resolution of the causes of action before the Court.

97.     The Contribution Lien continues to encumber all property and rights to property of the Kumjian Group notwithstanding any post-perfection transfer thereof by Kumjian Group to another person, subject to certain limits (including those set forth in 26 U.S.C. § 6323).

98.     The Contribution Lien continues to encumber cash and fungible securities transferred to, and held by, a person having actual knowledge of the existence of the encumbering Contribution Lien.[2]

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment (1) declaring certain property and rights to property to be encumbered by, and available for

---

[2]     *See* 26 U.S.C. § 430(k)(4)(C), 29 U.S.C. §§ 1083(k)(4)(C), 1368(c) (Contribution Liens are treated as federal tax liens); 26 U.S.C. § 6323(b)(1) (federal tax lien attaches to "securities" and is valid against one who acquires a "security" with actual knowledge); 26 U.S.C. §6323(h)(4) ("securities" include cash); 26 U.S.C. § 6323(i)(1) (defining actual knowledge).

satisfaction of, the Contribution Lien, including any property transferred after perfection of the encumbering Contribution Lien; and (2) declaring the existence and priority of rights in such property, including PBGC's rights as lienholder relative to the rights of transferees.

///

## COUNT IV: WRITS OF EXECUTION AND DECREES OF FORECLOSURE

99.     PBGC repeats and realleges the allegations contained in paragraphs 1 through 98.

**WHEREFORE,** PBGC respectfully requests that this Court:

    a.     issue writs of execution with respect to the judgments rendered by the Court in this action and the payment obligations secured by the Contribution Lien;

    b.     issue decrees of foreclosure directing the United States Marshal to:

        i.     levy on and transfer to PBGC all cash and cash equivalents encumbered by the Contribution Lien and in excess of superior liens thereon;

        ii.     levy on and transfer to PBGC such other property of the Kumjian Group as PBGC may nominate as acceptable in partial satisfaction of the Kumjian Group's obligations, to the extent such strict foreclosure is consistent with applicable law;

        iii.     levy on and sell all other property and rights to property encumbered by, and available for satisfaction of, the Contribution Lien or any lien arising from a judgment rendered by the Court in this action; and

        iv.     distribute the proceeds of sale in accordance with the priority of interests therein;

16

c.    issue such writs of execution and decrees of foreclosure irrespective of the location of the property subject thereto, pursuant to 28 U.S.C. § 2413, and irrespective of possessory interests inferior to PBGC's rights as lien-holder; and

d.    order that all sales pursuant to the Court's decrees of foreclosure shall be free and clear of all liens, security interests and other property rights that the Court has declared to exist in the property sold.

## COUNT V: TERMINATION LIABILITY

100.    PBGC repeats and realleges the allegations contained in paragraphs 1 through 99.

101.    Each member of the Kumjian Group is jointly and severally liable to PBGC for the Termination Liability.  *See* 29 U.S.C. § 1362(a)(1).

102.    As general partners of Kumjian Leasing, the Kumjians are jointly and severally liable for Kumjian Leasing's debt for the Termination Liability.  *See* Unif. Partnership Act 2013 § 306; Cal. Corp. Code § 16306.

103.    The amount of the Termination Liability is the amount of the Plan's unfunded benefit liabilities as of its termination date, plus interest from that date at the IRS Underpayment Rate.  *See* 29 U.S.C. § 1362(b)(1)(A); 29 C.F.R. § 4062.7.

104.    A plan's unfunded benefit liabilities are the excess of the value of its benefit liabilities determined on the basis of assumptions prescribed by PBGC over the value of its assets.  29 U.S.C. § 1301(a)(18).

105.    PBGC has determined that as of the Plan's termination date, December 31, 2014, Plan benefit liabilities were $2,220,026 and Plan assets were $0, resulting in unfunded benefit liabilities of $2,220,026.

106.    PBGC has determined that interest in the amount of $450,592 accrued on the Termination Liability from December 31, 2014, through June 30, 2019, such that the amount of Termination Liability on that date was $2,670,618.

107.    Interest continues to accrue on the Termination Liability, at the IRS Underpayment Rate, compounded daily.  29 C.F.R. § 4062.7.

108.    The Termination Liability is immediately due and payable, up to 30 percent of the collective net worth of the Kumjian Group.  29 U.S.C. § 1362(b)(2).

109.    Payment of so much of the Termination Liability as exceeds 30 percent of the collective net worth of the Controlled Group shall be made on commercially reasonable terms prescribed by PBGC.  29 U.S.C. § 1362(b)(2)(B).

110.    PBGC has determined that the Kumjian Group's collective net worth on the Plan's termination date was $3,483,475.  Thirty percent of this amount is $1,045,043.

111.    Because $1,045,043 is less than the Plan's unfunded benefit liabilities as of its termination date, only $1,045,043 of the Termination Liability is immediately due and payable.

112.    PBGC made a reasonable effort to agree with the Kumjian Group on commercially reasonable terms for payment of the Termination Liability exceeding $1,045,043, without success.

113.    PBGC prescribes that the Kumjian Group shall pay quarterly installments of $37,500 to PBGC until the Termination Liability, including interest, is paid in full.

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment in its favor against all Defendants, jointly and severally, in the amount of (i) $1,045,043, due on the date judgment is entered, plus (ii) $37,500, due on the last day of every third month after the month in which judgment is entered, until the Termination Liability, including pre-judgment interest, at the IRS underpayment rate, compounded daily; and post-judgment interest, as provided in  28 U.S.C. § 1961, is paid in full.

## COUNT VI: JUDGMENT DECLARING TERMINATION LIEN
## VALID AND PERFECTED AS FILED

114.    PBGC repeats and realleges the allegations contained in paragraphs 1 through 113.

115.   If, after demand by PBGC, the Controlled Group neglects or refuses to pay so much of the Termination Liability as is immediately due and payable, a lien in the amount of such amount in favor of PBGC arises on all property of the Controlled Group ("Termination Lien").  29 U.S.C. § 1368(a).

116.   On July 2, 2019, PBGC demanded payment from the Kumjian Group of $1,045,043 by 3:00 p.m. Eastern Standard Time on July 9, 2019.

117.   The Kumjian Group neglected or refused to make any payment to PBGC by 3:00 p.m. Eastern Standard Time on July 9, 2019.

118.   At 3:01 p.m. Eastern Standard Time on July 9, 2019, a Termination Lien in in the amount of  $1,045,043, in favor of PBGC, arose on all property of the Kumjian Group.

119.   Termination Liens are perfected upon PBGC's filing of a notice of federal lien in the appropriate jurisdiction(s).[3]

120.   On information and belief, on July 15, 2019, PBGC perfected the Termination Lien with respect to all personal property of Kumjian Inc. by filing a notice of federal lien with the Secretary of State of California, UCC Section.

121.   On information and belief, on July 15, 2019, PBGC perfected the Termination Lien with respect to all real property of the Kumjian Leasing, and rents or other proceeds thereof, by filing a notices of federal lien, naming Sarkis and Varsenik as debtors, with the Recorder's Office of Los Angeles, County, California.

122.   On information and belief, on July 15, 2019, PBGC perfected the Termination Lien with respect to all personal property of the Kumjian Leasing by filing a notices of federal lien, naming Sarkis and Varsenik as debtors, with the Secretary of State of California, UCC Section.

---

[3]   *See* 29 U.S.C. § 1368(c)(4) (notices of Termination Liens to be filed as under 6323(f) and (g); 26 U.S.C. § 6323(a) & (f) (federal tax liens perfected by filing notices).

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment declaring the Termination Lien valid and perfected in its full amount.

## COUNT VII: JUDGMENT DECLARING PRIORITY OF RIGHTS IN ASSETS ENCUMBERED BY CONTRIBUTIONS LIEN

123.   PBGC repeats and realleges the allegations contained in paragraphs 1 through 122.

124.   The Termination Lien encumbers all property and rights to property that the Kumjian Group held at the time that the Termination Lien arose, and that the Kumjian Group acquired thereafter.

125.   On information and belief, Kumjian Group has property or rights to property encumbered by, and available for satisfaction of, the Termination Lien, including cash, accounts receivable, inventory, and equipment.   PBGC expects to discover, in the course of this action, the full set of Kumjian Inc.'s assets encumbered by and available for satisfaction of the Termination Lien, and the locations of such assets.

126.   Kumjian Leasing has property or rights to property encumbered by, and available for satisfaction of, the Termination Lien, including 9254 Garvey, 9326 Garvey, and 9220 Fern.   PBGC expects to discover, in the course of this action, the full set of the Kumjian Leasing assets encumbered by and available for satisfaction of the Termination Lien, and the locations of such assets.

127.   PBGC has conducted a diligent search for recorded, unreleased liens on property of the Kumjian Group, seeking such liens on both specific, known property and, more generally, under the legal and trade names of the Pension Defendants in California, the only jurisdiction where members of the Kumjian Group are known to have conducted business.

128.   On information and belief, no creditor other than PBGC has perfected a lien against any of the Pension Defendants' property, with the possible exception of the Putative Los Angeles Lien.

129.    PBGC expects to discover, in the course of this action, the full set of unsatisfied liens and other property interests, if any, in assets of the Kumjian Group and all facts material to the priority of such liens and other property interests, and to join as parties in this action — pursuant to Federal Rule of Civil Procedure 19 and 28 U.S.C. § 1655 — any persons necessary to the just resolution of the causes of action before the Court.

130.    The Termination Lien continues to encumber all property and rights to property of the Kumjian Group notwithstanding any post-perfection transfer thereof by Kumjian Group to another person, subject to certain limits (including those set forth in 26 U.S.C. § 6323).

131.    The Termination Lien continues to encumber cash and fungible securities transferred to, and held by, a person having actual knowledge of the existence of the encumbering Termination Lien.[4]

**WHEREFORE,** PBGC respectfully requests that this Court issue judgment (1) declaring certain property and rights to property to be encumbered by, and available for satisfaction of, the Termination Lien, including any property transferred after perfection of the encumbering Termination Lien; and (2) declaring the existence and priority of rights in such property, including PBGC's rights as lienholder relative to the rights of transferees.

## COUNT VIII: WRITS OF EXECUTION AND DECREES OF FORECLOSURE

132.    PBGC repeats and realleges the allegations contained in paragraphs 1 through 131.

---

[4]    *See* 29 U.S.C. § 1368(c) (Termination Liens are treated as federal tax liens); 26 U.S.C. § 6323(b)(1) (federal tax lien attaches to "securities" and is valid against one who acquires a "security" with actual knowledge); 26 U.S.C. §6323(h)(4) ("securities" include cash); 26 U.S.C. § 6323(i)(1) (defining actual knowledge).

**WHEREFORE,** PBGC respectfully requests that this Court:

a.        issue writs of execution with respect to the judgments rendered by the Court in this action and the payment obligations secured by the Termination Lien;

b.        issue decrees of foreclosure directing the United States Marshal to:

i.        levy on and transfer to PBGC all cash and cash equivalents encumbered by the Termination Lien and in excess of superior liens thereon;

ii.        levy on and transfer to PBGC such other personal property of the Kumjian Group as PBGC may nominate as acceptable in partial satisfaction of the Kumjian Group's obligations, to the extent such strict foreclosure is consistent with applicable law;

iii.        levy on and sell all other property and rights to property encumbered by, and available for satisfaction of, the Termination Lien or any lien arising from a judgment rendered by the Court in this action; and

iv.        distribute the proceeds of sale in accordance with the priority of interests therein; and

c.        issue such writs of execution and decrees of foreclosure irrespective of the location of the property subject thereto, pursuant to 28 U.S.C. § 2413, and irrespective of possessory interests inferior to PBGC's rights as lien- holder; and

d.        order that all sales pursuant to the Court's decrees of foreclosure shall be free and clear of all liens, security interests and other property rights that the Court has declared to exist in the property sold.

Dated:  July 15, 2019

Respectfully submitted,

/s/Mark R. Snyder
MARK R. SNYDER (CA 109430)
JUDITH R. STARR
General Counsel
CHARLES L. FINKE
Deputy General Counsel
LORI A. BUTLER
Assistant General Counsel
MERRILL D. BOONE
MARK R. SNYDER (CA 109430)
Attorneys

PENSION BENEFIT GUARANTY CORPORATION
Office of the General Counsel
1200 K Street, N.W.
Washington, D.C. 20005-4026
Tel.: (202) 229-3423
Facsimile: (202) 229-4112
Emails: snyder.mark@pbgc.gov and
efile@pbgc.gov

Attorneys for Pension Benefit Guaranty
Corporation